UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

THE COMMUNITY ACTION ORGANIZATION OF
WESTERN NEW YORK, INC., *as Plan Sponsor for
the Pension Plan of the Community Action
Organization of Erie County, Inc.*, and THE AUDIT,
FINANCE, AND PENSION COMMITTEE OF THE
COMMUNITY ACTION ORGANIZATION OF
WESTERN NEW YORK, INC., *as Plan Administrator
for the Pension Plan of the Community Action
Organization of Erie County, Inc.*,

                                        Plaintiffs,

         v.                                                              Civil No.:

JOANN RUSS and *her successors, assigns, and heirs*,
ACTUARIAL CONSULTING SERVICES, INC., THE
BURKE GROUP OF ROCHESTER, INC., and
MUTUAL OF AMERICA LIFE INSURANCE
COMPANY,

                                        Defendants.

─────────────────────────────────

## <u>VERIFIED COMPLAINT</u>

Plaintiffs, the Community Action Organization of Western New York, Inc., as

"Plan Sponsor" of the Pension Plan of Community Action Organization of Erie County, Inc. (the

"Plan") and the Audit, Finance, and Pension Committee of the Community Action Organization

of Western New York, Inc., as "Plan Administrator" of the Plan (collectively the "Plaintiffs") for

their verified complaint against defendants, JoAnn Russ and her successors, assigns, and heirs

(collectively "Russ"), Actuarial Consulting Services, Inc., The Burke Group of Rochester, Inc.,

and Mutual of America Life Insurance Company, allege as follows:

**NATURE OF ACTION**

1.      This is an action brought under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to recover overpayments made to Russ from an ERISA plan and to enforce the terms of the Plan.

2.      The Plan is an employee pension benefit plan within the meaning of 29 U.S.C. §1002(2)(A).  Specifically, this action is brought under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

3.      Plaintiffs seek equitable relief on behalf of the Plan, and also seek an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

**PARTIES**

4.      The Plan Sponsor established the Plan on or about December 1, 1979, as maintained in written form in accordance with the amended and restated Plan document, effective January 1, 2015, as subsequently amended.

5.      The Board of Directors of the Plan Sponsor delegated authority to the Plan Administrator to act on behalf of the Plan.

6.      The Plan Sponsor and Plan Administrator are empowered to bring the present civil suit as against Defendants pursuant to 29 U.S.C. § 1132(a)(3).

7.      Upon information and belief, Russ was at all relevant times a participant of the Plan, with an address at 40 Vernon Place, Buffalo, New York 14214.

- 2 -

8.      Actuarial Consulting Services, Inc. ("Actuarial") is a domestic business corporation with its principal place of business located at 200 John James Audubon Parkway, Suite 100, Amherst, New York 14228, which provided actuarial services to the Plan pursuant to a services agreement with the Plan Sponsor.

9.      The Burke Group of Rochester, Inc. ("Burke") is a domestic business corporation with its principal place of business located at 80 Linden Oaks Drive, Suite 210, Rochester, New York 14625, which provides actuarial services to the Plan pursuant to a services agreement with the Plan Sponsor.

10.     Mutual of America Life Insurance Company ("Mutual") is a domestic business corporation with its principal place of business located at 320 Park Avenue, New York, New York 10022, which upon information and belief is the custodian of the Plan assets at issue in this action.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1132(e), 29 U.S.C. § 1132(f), 29 U.S.C. § 1132(g)(1), and 28 U.S.C. § 1331.

12.     Venue is proper in the Western District of New York under 29 U.S.C. §1132(e)(2) because Russ is located within the District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim against Defendants occurred within the District.

## FACTUAL BACKGROUND

### I.      Russ's Participation in the Plan and Ultimate Overpayment Therefrom

13.      Russ was employed by the Plan Sponsor on September 8, 1981, and separated from service on July 1, 1989 with a vested accrued benefit under the Plan.

14.      The Plan was amended in 2019 to allow eligible vested participants to make an election to receive a lump sum distribution of his/her accrued monthly pension benefit (the "2019 Lump Sum Window").

15.      On or about October 31, 2019, Burke, on behalf of Plaintiffs, notified Russ that the Plan was being amended "to allow an unlimited lump sum distribution option for vested terminated [P]lan participants."  A copy of Burke's October 31, 2019 letter is attached as **Exhibit A**.

16.      Page 1 of Burke's letter set forth the terms of any "lump sum distribution:"

During this limited time opportunity, your options are:

| Choice | Action by December 10, 2019 |
|---|---|
| 1. Elect to receive a single lump sum payment in December, 2019 | ➢ Return *Benefit Election Form* 1(3 pages) and *Spousal Consent Form 2* |
| 2. Elect to start monthly benefit payments as early as January, 2020 (the amount depends on the form of payment you elect). | ➢ Return *Benefit Election Form 1 and* call Burke Group at (800) 822-9620 |
| 3. Wait until later to begin receiving your pension (available upon request any time after your early or normal retirement date) | ➢ Do nothing – no action is required at this time |

Ex. A at p. 1.

17.     Burke's letter further stated that Russ was "entitled to a vested benefit of $864.00 per month payable at [her] Normal Retirement Date of 5/1/2018 under the [Plan] and that the lump sum value of [her] accrued benefit is an available payment option."  Ex. A at pp. 2-3.

18.     To proceed with Option 1, characterized in the chart above (*see* ¶ 16, *supra*), Russ was to return to Burke "Benefit Election Form 1 (3 pages) and Spousal Consent Form 2."  Ex. A at p. 1.

19.     In accordance with such directive, Russ delivered to Burke the completed Benefit Election Form 1 and Spousal Consent Form 2, copies of which are attached as **Exhibit B**.

20.     Russ elected to receive a lump sum "Rollover" in the amount of $183,838.12 as of December 31, 2019, and directed that payment be made to her IRA with Mutual.  *Id.*

21.     Ms. Russ received a check in the amount of $183,838.12 on December 26, 2019, made payable to Mutual, the custodian of Russ's IRA, a copy of which is attached as **Exhibit C**.  The check was electronically deposited and paid to Mutual for the benefit of Russ on December 31, 2019.  *Id.*

## II.     Plaintiffs' Discovery of the Overpayment

23.     Prior to adoption and announcement of the 2019 Lump Sum Window amendment, the Plan Sponsor hired Burke to take over the actuarial services previously provided by Actuarial.  A copy of the parties' services agreement is attached as **Exhibit D**.

24.     In connection with the transfer of actuarial services, Actuarial provided worksheets containing demographic, census and Plan benefit data that Burke later used to prepare the lump sum actuarial equivalence analysis for the 2019 Lump Sum Window project. This analysis was used to calculate and communicate the lump sum amount to Plan participants.

25.     Actuarial's worksheets mistakenly presented Russ's annual Plan benefit ($720) as a monthly pension benefit.  The correct monthly accrued pension benefit figure was approximately $60.

26.     That same data was subsequently transmitted to Burke, Actuarial's replacement, for its review and usage in calculating the lump sum payments described above. *See* Sec. I, *supra*.

27.     Upon information and belief, Actuarial's error in calculation of Russ's accrued Plan benefit(s) caused Burke to disseminate incorrect information regarding Russ's ultimate lump sum distribution "Rollover."

28.     Through the 2019 Lump Sum Window, Russ was actually entitled to receive a lump sum benefit of $15,319.84, which was the actuarial equivalent of a vested monthly benefit of $60 payable at the Participant's late retirement date, January 1, 2020.

29.     Accordingly, Ms. Russ was overpaid by $171,744.01, including interest in the amount of $3,225.73 (at the Plan's actuarial equivalence rate), as of November 30, 2020 (the "Overpayment").  Since that date, interest has and will continue to accrue at the Plan's actuarial equivalence rate, until the Overpayment plus such interest are repaid to the Plan.

30.     On November 9, 2020, and in accordance with the self-correction procedures for qualified retirement plan overpayments set forth in IRS Revenue Ruling 2019-19, Burke on behalf of the Plan Administrator, communicated a demand to Russ, requesting repayment of the Overpayment.  A copy of Burke's demand letter is attached as **Exhibit E**.

31.     Russ responded to Burke's demand letter on January 11, 2021 in an effort to "resolve this matter as soon as possible," but noted that a portion of the funds received by her was no longer available to completely repay the Plan in the amount of the Overpayment.  A copy of Russ's response is attached as **Exhibit F**.

32.     Upon information and belief, during the time between Burke's demand letter and Russ's response to same, Russ communicated with Burke regarding the Overpayment.

33.     Upon information and belief, Russ expressed to Burke her impression that the lump sum amount she received was "really high," but did not confirm the accuracy of the amount or its origins with Burke or any other party.

**III.     Full and Fair Review of Russ Dispute Regarding Overpayment**

36.     In accordance with the timeframes and procedures under ERISA and the Plan respecting initial claims for pension plan benefits, the Plan Administrator reviewed and issued a decision with respect to Russ's January 11, 2021 letter.

37.     On or about February 2, 2021, the Plan Administrator denied Russ's claim and rendered a decision seeking recoupment, including interest, from Russ and all appropriate parties as provided under the Plan document and relevant law.  A copy of the Plan Administrator's February 2, 2021 denial communication is attached as **Exhibit G**.

- 7 -

38.     Russ was required to appeal the Plan Administrator's denial of her claim by April 4, 2021.

39.     To date, there has been no communication from Russ regarding her appeal, nor have Plaintiffs received reimbursement from Russ in response to their demand for return of the Overpayment and interest.

40.     On or about February 4, 2021, Plaintiffs' counsel formally placed Mutual on notice that, absent a successful appeal by Russ, a dispute exists regarding the funds in Russ's IRA at Mutual and that the Plan Administrator intends to assert an equitable lien against all such traceable funds.  A copy of Plaintiffs' counsel's February 4, 2021 letter is attached as **Exhibit H**.

41.     To date, Mutual has refused to return the Overpayment funds in its possession.

42.     Pursuant to IRS Revenue Procedure 2019-19 (Section 6.06(3) and Section 2.04(1) of Appendix B), the Plan Sponsor is ultimately liable for restoring the Overpayment, adjusted for earnings, to the Plan.

43.     Plaintiffs have suffered and will continue to suffer a loss due to the acts and/or omission of Actuarial in failing to properly calculate and record Russ's monthly Plan benefit amount.

44.     Actuarial is liable to Plaintiffs for the full amount of the Overpayment plus interest.

45.     The Plan has suffered and will continue to suffer a loss due to the acts and/or omission of Burke in improperly calculating Russ lump sum payment and making the Overpayment.

46.     Burke is liable to Plaintiffs for the full amount of the Overpayment plus interest.

## FIRST CAUSE OF ACTION
### (Misappropriation – As Against Russ)

47.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48.     Russ has wrongfully misappropriated funds that she knew were not rightfully hers, but which rightfully belonged to the Plan.

49.     By reason of Russ's wrongful misappropriation of the Overpayment, Plaintiffs have suffered a loss in that same amount, together with interest from the date of the Overpayment.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment – As Against Russ)

50.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51.     Russ has been enriched at Plaintiffs' expense.

52.     Russ has been enriched by refusing to return and continuing to hold and receive the benefit of the Overpayment at the expense of Plaintiffs.

53.     Russ has been unjustly enriched at the expense of Plaintiffs in the amount of the Overpayment, plus interest from the date of the Overpayment.

## THIRD CAUSE OF ACTION
### (Equitable Lien – As Against Russ & Mutual)

54.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55.     Plaintiffs have an equitable lien on all sums erroneously paid to Russ and the proceeds thereof as subsequently distributed to and deposited with Mutual, and therefore Russ and Mutual are liable in equity to account to the Plaintiffs for the same, and to restore said funds to the Plan.

56.     By reason of the foregoing, Plaintiffs are entitled to judgment granting them an equitable lien in the amount of the Overpayment, plus interest, against any and all assets held by, or which may come to be held by, Russ and Mutual herein.

## FOURTH CAUSE OF ACTION
### (Breach of Contract – As Against Actuarial)

57.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58.     Plaintiffs and Actuarial formed a contract for actuarial services that, upon information and belief, required Actuarial to perform its services for Plaintiffs with the care,

- 10 -

skill, and diligence that a prudent plan administrator of an ERISA employee pension benefit plan familiar with such matters would use under the circumstances.

59.     Under the terms of Plaintiffs' agreement for services with Actuarial, Actuarial agreed to render comprehensive analyses of relevant demographic, census and Plan benefit data that was, *inter alia*, to be used to prepare the lump sum actuarial equivalence analysis for the 2019 Lump Sum Window project.

60.     Actuarial's analyses mistakenly presented Russ's and, upon information and belief, many other Plan participant's annual Plan benefit as a monthly pension benefit.

61.     Upon information and belief, Actuarial's error in calculation of Russ's accrued Plan benefit(s) caused its successor to disseminate incorrect information regarding Russ's and, upon information and belief, many other's ultimate lump sum distribution(s), which has had the immediate, and long term, effect(s) of Plan overpayments including, but not limited to, that Overpayment made to Russ.

62.     Actuarial breached the terms of its services agreement with Plaintiffs by failing to perform its services in accordance with the standard of care and objectives prescribed above and thus failed to satisfy its obligation(s) to Plaintiffs.  *See* ¶ 58.

63.     Plaintiffs, at all times, performed in accordance with their services agreement with Actuarial.

64.     By reason of Actuarial's breach, Plaintiffs have suffered a loss in the amount of the Overpayment to Russ, together with interest from the date of the Overpayment.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – As Against Burke)**

65.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs and Burke formed a contract for actuarial services that required Burke to perform its services for Plaintiffs with the care, skill, and diligence that a prudent plan administrator of an ERISA employee pension benefit plan familiar with such matters would use under the circumstances.

67.     By virtue of the foregoing, Burke was, and remained, under a distinct obligation to provide Plaintiffs with accurate data with respect to its delivery of information surrounding Plan participant's lump sum payments.

68.     Burke failed to recognize that the data provided to it by Actuarial in connection with the transfer of actuarial services to it was incorrect and contained various errors in the calculation(s) of Russ's and, upon information and belief, other Plan participant's lump sum payments described above.

69.     Upon information and belief, Burke should not have simply relied upon information transferred to it by its predecessor, Actuarial, but should have verified the accuracy of the data transferred to it by Actuarial prior to utilizing it for purposes of providing actuarial services to Plaintiffs.

70.     Hence, Burke failed to perform in accordance with its services agreement and breached its services agreement entered into with Plaintiffs by utilizing incorrect information

to calculate Russ's and, upon information and belief, other Plan participant's accrued Plan

benefit(s), which, *inter alia*, caused Burke to disseminate incorrect information regarding Russ

and, upon information and belief, other Plan participant's lump sum distribution(s).

71.     Plaintiffs, at all times, performed in accordance with its services

agreement with Burke.

72.     By reason of Burke's breach, Plaintiffs have suffered a loss in the amount

of the Overpayment to Russ, together with interest from the date of the Overpayment.

## SIXTH CAUSE OF ACTION
### (Negligence – As Against Actuarial)

73.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 72 as if fully set forth herein.

74.     Actuarial owed a duty of reasonable care and fiduciary duty to Plaintiffs,

which Actuarial knew to be acting for the benefit of the Plan.  Actuarial intended for Plaintiffs to

rely upon its financial and strategic advice, which Plaintiffs did, in fact, reasonably rely on.

75.     As an actuarial valuation expert with accounting expertise, Actuarial was

obligated to perform its calculations as a reasonably prudent professional in such field.

76.     Actuarial breached its duties through various and unreasonable failures,

including, but not limited to, its mistaken presentation of Russ's and, upon information and

belief, many other Plan participant's annual Plan benefit(s) as a monthly pension benefit.

- 13 -

77.     This, *inter alia*, cumulatively fell below the level of performance and standard of care Actuarial owed to Plaintiffs.

78.     By reason of Actuarial's breach, Plaintiffs have suffered a loss in the amount of the Overpayment to Russ, together with interest from the date of the Overpayment.

## SEVENTH CAUSE OF ACTION
### (Negligence – As Against Burke)

79.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80.     Burke owed a duty of reasonable care and fiduciary duty to Plaintiffs, which Burke knew to be acting for the benefit of the Plan.  Burke intended for Plaintiffs to rely upon its financial and strategic advice, which Plaintiffs did, in fact, reasonably rely on.

81.     As an actuarial valuation expert with accounting expertise, Burke was obligated to perform its calculations as a reasonably prudent professional in such field.

82.     Burke breached its duties through various and unreasonable failures, including, but not limited to, its failure to recognize that the data provided to it by Actuarial in connection with the transfer of actuarial services to it was incorrect and contained various errors in the calculation(s) of Russ's and, upon information and belief, other Plan participant's lump sum payments described above.

83.     This, *inter alia*, cumulatively fell below the level of performance and standard of care Burke owed to Plaintiffs.

84.     By reason of Burke's breach, Plaintiffs have suffered a loss in the amount of the Overpayment to Russ, together with interest from the date of the Overpayment.

### EIGHTH CAUSE OF ACTION
**(Indemnification – As Against Actuarial)**

85.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 84 as if fully set forth herein.

86.     Plaintiffs and Actuarial formed a contract for actuarial services that, upon information and belief, required Actuarial to perform its services for Plaintiffs with the care, skill, and diligence that a prudent plan administrator of an ERISA employee pension benefit plan familiar with such matters would use under the circumstances.

87.     Under the terms of Plaintiffs' agreement for services with Actuarial, Actuarial agreed to render comprehensive analyses of relevant demographic, census and Plan benefit data that was, *inter alia*, to be used to prepare the lump sum actuarial equivalence analysis for the 2019 Lump Sum Window project.

88.     Actuarial's analyses mistakenly presented Russ's and, upon information and belief, many other Plan participant's annual Plan benefit as a monthly pension benefit.

89.     Upon information and belief, Actuarial's error in calculation of Russ's accrued Plan benefit(s) caused its successor to disseminate incorrect information regarding Russ's and, upon information and belief, many other's ultimate lump sum distribution(s), which has had the immediate, and long term, effect(s) of Plan overpayments including, but not limited to, that made to Russ.

- 15 -

90.     Actuarial breached the terms of its services agreement with Plaintiffs by failing to perform its services in accordance with the standard of care and objectives prescribed above and thus failed to satisfy its obligation(s) to Plaintiffs.  *See* ¶ 58.

91.     Plaintiffs, at all times, performed in accordance with its services agreement with Actuarial.

92.     By reason of Actuarial's breach, Plaintiffs have suffered a loss in the amount of the Overpayment to Russ, together with interest from the date of the Overpayment.

93.     Should Plaintiffs be required to, pursuant to IRS Revenue Procedure 2019-19 (Section 6.06(3) and Section 2.04(1) of Appendix B), restore the Overpayment, adjusted for earnings, to the Plan (*see* ¶ 42), Actuarial is required to indemnify Plaintiffs from Actuarial's own actions or omissions that have caused damage to Plaintiffs.

## NINTH CAUSE OF ACTION
### (Indemnification – As Against Burke)

94.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 93 as if fully set forth herein.

95.     Plaintiffs and Burke formed a contract for actuarial services that required Burke to perform its services for Plaintiffs with the care, skill, and diligence that a prudent plan administrator of an ERISA employee pension benefit plan familiar with such matters would use under the circumstances.

96.     By virtue of the foregoing, Burke was, and remained, under a distinct obligation to provide Plaintiffs with accurate data with respect to its delivery of information surrounding Plan participant's lump sum payments.

97.     Burke failed to recognize that the data provided to it by Actuarial in connection with the transfer of actuarial services to it was incorrect and contained various errors in the calculation(s) of Russ's and, upon information and belief, other Plan participant's lump sum payments described above.

98.     Upon information and belief, Burke should not have simply relied upon information transferred to it by its predecessor, Actuarial.

99.     Hence, Burke failed to perform in accordance with its services agreement and breached its services agreement entered into with Plaintiffs by utilizing incorrect information to calculate Russ's and, upon information and belief, other Plan participant's accrued Plan benefit(s), which, *inter alia*, caused Burke to disseminate incorrect information regarding Russ and, upon information and belief, other Plan participant's lump sum distribution(s).

100.     Plaintiffs, at all times, performed in accordance with its services agreement with Burke.

101.     By reason of Burke's breach, Plaintiffs have suffered a loss in the amount of the Overpayment to Russ, together with interest from the date of the Overpayment.

102.     Pursuant to the Indemnification Clause within the parties' services agreement, Burke is required to indemnify Plaintiffs from Burke's own actions or omissions that have caused damage to Plaintiffs.

103.     Should Plaintiffs be required to, pursuant to IRS Revenue Procedure 2019-19 (Section 6.06(3) and Section 2.04(1) of Appendix B), restore the Overpayment, adjusted for earnings, to the Plan (*see* ¶ 42), Burke is required to indemnify Plaintiffs from Burke's own actions or omissions that have caused damage to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully demand judgment against Defendants, jointly and severally, as follows:

a.     On the first cause of action, judgment against Russ in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

b.     On the second cause of action, judgment against Russ in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

c.     On the third cause of action, an order directing Russ and Mutual to account to Plaintiffs for the full amount of the Overpayment and awarding Plaintiffs an equitable lien on any property held or owned by Russ and/or Mutual in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020, in their favor and against Russ and Mutual on account of the Overpayment;

d.     On the fourth cause of action, judgment against Actuarial in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

e.      On the fifth cause of action, judgment against Burke in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

f.      On the sixth cause of action, judgment against Actuarial in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

g.      On the seventh cause of action, judgment against Burke in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

h.      On the eighth cause of action, judgment against Actuarial in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

i.      On the ninth cause of action, judgment against Burke in the amount of $171,744.01, plus interest at the Plan's actuarial equivalence rate from November 30, 2020;

j.      An order awarding Plaintiffs' reasonable attorneys' fees and the costs of this action; and

k.      And granting such other and further relief as it deems appropriate.

Dated:  April 13, 2021

**HODGSON RUSS** LLP
*Attorneys for Plaintiffs,* The Community Action
Organization Of Western New York, Inc., *as Plan
Sponsor for the Pension Plan of the Community
Action Organization of Erie County, Inc.*, and The
Audit, Finance, And Pension Committee Of The
Community Action Organization Of Western New
York, Inc., *as Plan Administrator for the Pension
Plan of the Community Action Organization of Erie
County, Inc.*,


By:  _____ James J. Zawodzinski, Jr. _____
                Adam W. Perry
                James J. Zawodzinski, Jr.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
Telephone:  (716) 856-4000
E-mail:  *jzawodzi@hodgsonruss.com*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

THE COMMUNITY ACTION ORGANIZATION OF
WESTERN NEW YORK, INC., *as Plan Sponsor for
the Pension Plan of the Community Action
Organization of Erie County, Inc.*, and THE AUDIT,
FINANCE, AND PENSION COMMITTEE OF THE
COMMUNITY ACTION ORGANIZATION OF
WESTERN NEW YORK, INC., *as Plan Administrator
for the Pension Plan of the Community Action
Organization of Erie County, Inc.*,

Plaintiffs,

v.                                                                    Civil No.:

JOANN RUSS and *her successors, assigns, and heirs*,
ACTUARIAL CONSULTING SERVICES, INC., THE
BURKE GROUP OF ROCHESTER, INC., and
MUTUAL OF AMERICA LIFE INSURANCE
COMPANY,

Defendants.

─────────────────────────────────────────

## VERIFICATION TO COMPLAINT

  I, Deanne Montgomery, submit this sworn, notarized verification on behalf of
THE COMMUNITY ACTION ORGANIZATION OF WESTERN NEW YORK, INC., *as Plan
Sponsor for the Pension Plan of the Community Action Organization of Erie County, Inc.*, and
THE AUDIT, FINANCE, AND PENSION COMMITTEE OF THE COMMUNITY ACTION
ORGANIZATION OF WESTERN NEW YORK, INC., *as Plan Administrator for the Pension
Plan of the Community Action Organization of Erie County, Inc.*, and in so doing, hereby affirm
that: (i) I am the Chief Financial Officer of the Community Action Organization of Western New
York, Inc.; (ii) I have read the Verified Complaint; (iii) insofar as the facts alleged in the
Verified Complaint concern my acts and deeds, such facts are true; and (iv) insofar as the facts
alleged in the Verified Complaint concern the acts and deeds of others, I believe them to be true.

[SIGNATURE PAGE FOLLOWS]

- 21 -

Executed on April 13th, 2021.

_____
Thomas Kim, CEO

SWORN TO AND SUBSCRIBED

before me this 13 day of

April __, 2021.

_____
NOTARY PUBLIC

JOSHUA SCIGAJ
Notary Public, State of New York
Qualified in Erie County
Reg. No. 01SC6227604
My Commission Expires Sept. 7, 20__22